United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| M.T., Plaintiff, v. FRANK BISIGNANO, et al., Defendants. | Case No. 25-cv-08276-LB **ORDER REMANDING CASE** Re: ECF Nos. 11, 15 |

## INTRODUCTION

The plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act.[1] The administrative law judge (ALJ) found severe physical impairments involving the plaintiff's knees, pelvis, and spine, found her medically determinable mental impairments (opioid use disorder and stimulant use disorder) non-severe, assessed a residual functional capacity (RFC) for a reduced range of light work with no mental limitations, and found at step five that she could perform other work in the national economy.[2] The parties' cross-motions for summary judgment,

[1] Compl. – ECF No. 1; Administrative Record (AR) 10–23 (ALJ decision). Record citations are to the administrative record at ECF No. 10 and use the AR's continuous pagination. Citations to other filings are to the ECF-generated page numbers at the top of documents.

[2] AR 12–23.

submitted without oral argument under Civil Local Rule 16-5, present four issues: (1) whether the ALJ properly evaluated the medical-opinion evidence, principally the opinions of the consultative psychologist Ruth Gallo, Psy.D., and the consultative internist Robert Tang, M.D.; (2) whether the step-two finding that the plaintiff's mental impairments are non-severe is supported by substantial evidence; (3) whether the step-three finding is adequate; and (4) whether the RFC is supported by substantial evidence.[3]

The court grants the plaintiff's motion in part, denies the Commissioner's cross-motion, and remands for further proceedings. The ALJ's rejection of Dr. Gallo's opinion is not supported by substantial evidence: the ALJ discounted the opinion as unsupported and inconsistent without confronting the standardized-test results (processing speed at the second percentile and memory indices between the 0.2 and second percentiles) that anchored it, and the reasons the ALJ gave do not contradict the limitations she rejected. The step-two severity finding and the RFC rest on that evaluation and must be revisited too, and the error is not harmless because the vocational hypothetical did not capture the assessed limitations. On remand, the ALJ also must address Dr. Tang's findings about alternating sitting, standing, and walking. The remand is for further proceedings, not benefits: conflicts remain (including the contrary testimony of the medical expert Betty Borden, Ph.D.) that the ALJ must resolve in the first instance.

## STATEMENT

### 1. Procedural History

The plaintiff protectively filed her SSI application on February 28, 2022, alleging disability beginning January 1, 2020.[4] The agency denied the application initially on February 24, 2023, and on reconsideration on December 19, 2023, and she requested a hearing.[5] The ALJ held three hearings: an in-person hearing on August 29, 2024, at which the plaintiff testified and a vocational

[3] Pl.'s Br. – ECF No. 11 at 4; Comm'r's Br. – ECF No. 15 at 5; Reply – ECF No. 19.

[4] AR 10, 131–32.

[5] AR 10, 164, 172, 179.

expert (VE) participated; a supplemental hearing on March 27, 2025, which the plaintiff (who had lost her identification and did not answer the calls placed to her) could not attend, and at which the medical expert Betty Borden, Ph.D., and a second VE testified; and a telephone hearing on May 9, 2025, at which the plaintiff testified and a third VE participated.[6] On May 22, 2025, the ALJ issued an unfavorable decision, and on July 31, 2025, the Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.[7] The plaintiff timely sued.[8]

**2. Medical Records and Opinion Evidence**

**2.1 Physical Impairments and Dr. Tang's Examination**

In October 2018, a car struck the plaintiff at low speed while she was walking. Imaging showed an acute, mildly displaced transverse fracture of the fifth sacral segment, a coccyx fracture, and moderate stenosis of the thecal sac with foraminal stenosis at L4–L5 and L5–S1.[9] In September 2021, she fell onto both knees and sustained a closed, nondisplaced left-patellar fracture; primary-care visits later that year documented delayed healing.[10] A July 2023 MRI of the right knee showed degeneration and tearing of the lateral meniscus, tricompartmental arthrosis, a five-centimeter ganglion cyst on the medial collateral ligament, a small effusion, and soft-tissue edema.[11] A January 2024 orthopedic evaluation recommended a multimodal plan (NSAIDs, ice, physical therapy, activity modification, and possibly injections); by February 2024, the plaintiff reported that her knee pain had decreased on Mobic.[12]

On November 12, 2024, Robert Tang, M.D., performed an internal-medicine consultative examination. He recorded a normal gait, negative straight-leg raising, full strength, guarded knee

---

[6] AR 10, 40, 70, 103.

[7] AR 1–6, 10–23.

[8] Compl. – ECF No. 1 (filed Sep. 29, 2025); Pl.'s Br. – ECF No. 11 at 4.

[9] AR 16–17, 635, 645, 648, 935.

[10] AR 17, 661–62, 668, 747, 750.

[11] AR 18, 994.

[12] AR 18, 905–07, 972.

range of motion, and lumbar end-point discomfort.[13] In his medical source statement, Dr. Tang limited lifting and carrying to twenty pounds occasionally and ten frequently, limited standing and walking to up to six hours in an eight-hour day, found no sitting limitation, precluded climbing ladders and balancing, allowed other postural activities frequently, precluded unprotected heights, and allowed only occasional work with moving mechanical parts. He also stated that the plaintiff has a "decrease in physical function with alternating sitting, standing, and walking status," and (according to the plaintiff), the form limits sitting to two hours at a time and standing and walking to one hour each at a time.[14] Dr. Tang marked several categories (other working conditions, travel, and the episodic completion of daily activities) as "pending mental health evaluation."[15]

**2.2 Mental-Health Treatment**

The plaintiff has a long history of substance use (daily heroin use for more than thirty years beginning in adolescence, plus methamphetamine). By mid-2023 she entered medical respite care and began medication-assisted treatment with monthly Sublocade injections.[16] From 2023 into 2024, she was treated at LifeLong Medical Care's Adeline Respite program, including individual therapy with Kari Jennings-Parriott, LCSW, who repeatedly diagnosed a moderate episode of recurrent major depressive disorder.[17] The mental-status findings in those records vary. On many dates (September 14 and 19 and October 26, 2023, January 26 and February 9, 2024, and at the March 5, 2024 discharge after a ninety-day stay), the notes record poor or fleeting eye contact, slowed motor activity, slowed, soft, or mumbled speech, constricted affect, sleepy, drowsy, or distracted attention, a distractible thought process, a guarded or lethargic demeanor, and limited or fair insight.[18] On other dates, the notes record alert attention, an alert and oriented presentation, a

---

[13] AR 18–19, 1193–201.

[14] AR 1192, 1195, 1200–01; Reply – ECF No. 19 at 6 (citing AR 1192).

[15] AR 1195, 1197, 1200–01.

[16] AR 17, 661–62, 796, 975, 1017, 1062.

[17] AR 966, 973, 979, 988, 997, 1000, 1030–31, 1040, 1048, 1050–51, 1083.

[18] AR 966, 973, 979, 1030, 1042–43, 1048.

United States District Court
Northern District of California

cooperative and engaged demeanor, normal or euthymic mood, and goal-directed thought.[19] A January 5, 2024 counseling note records that the plaintiff was taking her medications and following up with providers but "struggle[d] with remembering and organizing her appts."[20] On January 11, 2024, she began an orthopedic visit by saying that she did not know what month it was.[21] A July 2023 psychiatric intake documented drowsiness, an extensive trauma history (childhood abuse and prolonged homelessness), difficulty initiating tasks ("I can complete a task, it's just getting it started"), and reported isolation from others.[22]

**2.3 Dr. Gallo's Psychological Examination**

On January 31, 2025, Ruth Gallo, Psy.D., performed a psychological consultative examination consisting of a clinical interview, a mental-status examination, and standardized testing.[23] In the interview, the plaintiff reported two prior psychiatric hospitalizations after suicide attempts (a history Dr. Borden later testified she could not corroborate in the treatment records) and reported that she cannot use public transportation or a ride-share service without supervision.[24] On the mental-status examination, Dr. Gallo described the plaintiff as pleasant, cooperative, and quick to establish rapport, with an "ok" mood, a full and congruent affect, and an intact, linear, and logical thought process with normal thought content.[25] The parties dispute the memory findings on the same pages: the plaintiff cites the report for marked memory impairment, with recent and remote memory "impaired due to inability to remain focused" and moderate impairments in attention, concentration, and judgment, while the Commissioner and the ALJ cite the report's notation that recent and remote memory "seemed to be intact."[26]

---

[19] AR 983, 993, 1000, 1006, 1026, 1040, 1051, 1070, 1077–78, 1080, 1086 (cited at AR 14, 21).

[20] AR 999–1000.

[21] AR 905.

[22] AR 1082–84; *see* AR 673, 988, 991, 1056–57.

[23] AR 1208–18.

[24] AR 1208–09; *see* AR 107–09 (Dr. Borden's testimony).

[25] AR 21, 1209, 1214.

[26] *Compare* Pl.'s Br. – ECF No. 11 at 9–10, *and* Reply – ECF No. 19 at 3 (citing AR 1209–10), *with* Comm'r's Br. – ECF No. 15 at 10, *and* AR 21 (citing AR 1210 (Ex. 17F/4)).

On testing, the plaintiff completed Trail Making Test Part A in one minute and thirty-four seconds with no errors and Part B in two minutes and forty-five seconds with two errors, against thresholds of roughly forty and ninety-one seconds that Dr. Gallo identified as signaling deficient performance.[27] On the WAIS-IV, she scored at the twenty-seventh percentile for verbal comprehension, the twenty-third for working memory, the second for processing speed, and the eighteenth for full-scale IQ (a score of 86, in the low-average range). On the WMS-IV, she scored at the second percentile for immediate memory, the 0.2 percentile for delayed memory, and the first percentile for both auditory and visual memory.[28] Dr. Gallo diagnosed stimulant use disorder and unspecified depressive disorder.[29] She assessed a mild limitation in understanding, carrying out, applying, and remembering simple instructions; a moderate-to-marked limitation for complex instructions; a moderate limitation in sustaining concentration, attention, consistency, and persistence at a reasonable pace; a moderate limitation in maintaining effective social interaction with supervisors, co-workers, and the public; and a marked limitation in adapting to the usual stresses and pressures of competitive work, including completing a normal workday or workweek and responding to changes.[30] On the agency's check-box form, she rated as marked the abilities to carry out complex instructions, to make judgments on complex work-related decisions, to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and changes.[31] On substance use, Dr. Gallo explained that long-term heroin use likely contributes to the cognitive limitations, that some impairments could improve with abstinence and treatment, and that residual cognitive and behavioral impairments could persist even with sobriety.[32]

---

[27] AR 1211.

[28] AR 1212.

[29] AR 1213.

[30] AR 1214.

[31] AR 1216–17.

[32] AR 1217–18.

United States District Court
Northern District of California

**2.4 The Prior Administrative Findings and Dr. Borden's Testimony**

The state-agency medical and psychological consultants found at both levels that there was insufficient evidence to assess the plaintiff's impairments because she did not attend a consultative examination or return forms.[33] At the March 27, 2025 hearing, Dr. Borden (a psychologist who reviewed the record) testified that the only medically determinable mental impairments are opioid use disorder and stimulant use disorder and that both are non-severe; that the record's references to depression and PTSD symptoms do not meet the criteria of either impairment; that the record does not establish a cognitive impairment; that Dr. Gallo's test scores do not support consistent findings of problems with cognition, intelligence, memory, or attention; that the marked social limitations were inconsistent with Dr. Gallo's narrative (a pleasant, cooperative claimant, quick to establish rapport); that the mental-status examination did not appear consistent with substance abuse and that the records do not establish limitations from substance abuse; and that she could not find records of the reported psychiatric hospitalizations.[34] According to the plaintiff's account of the transcript (which the Commissioner does not dispute), Dr. Borden also acknowledged that a second-percentile processing-speed score "would suggest" a severe cognitive limitation and that severely deficient memory scores "could represent" severe cognitive impairment, but she discounted the scores because she saw no diagnosis or indication of cognitive problems in the treatment records.[35]

**2.5 The Claimant's Testimony**

At the August 2024 and May 2025 hearings, the plaintiff testified that she cannot stand more than ten minutes and uses a cane when she expects to stand in line, that she can sit and walk and can lift a gallon of milk, that on many days she needs help dressing and needs help carrying groceries, that she sleeps sitting up and a friend drives her where she needs to go, and that she does her own laundry but sometimes forgets the detergent and must rewash her clothes.[36] She also testified that she forgets appointments unless reminded, forgets why she is at appointments once

[33] AR 20–21 (Exs. 1A, 4A).

[34] AR 20–21, 107–18; Comm'r's Br. – ECF No. 15 at 8–10.

[35] AR 114–15; Pl.'s Br. – ECF No. 11 at 27.

[36] AR 15–16 (summarizing testimony), 85, 91.

United States District Court
Northern District of California

she arrives, and loses her train of thought mid-conversation.[37] As of May 2025, her last heroin use was a few months earlier and her last methamphetamine use a few weeks earlier; she was receiving monthly Sublocade injections.[38]

**3. The ALJ's Decision**

Applying the five-step sequential evaluation, the ALJ found at step one that the plaintiff had not engaged in substantial gainful activity since the February 28, 2022 application date, and at step two that she has severe physical impairments: tricompartmental arthrosis of the right knee with effusion, popliteal cyst, and mild edema; a right-knee meniscus tear; a history of a closed nondisplaced left-patella fracture with delayed healing; a history of a mildly displaced transverse pelvis fracture; a history of a coccyx fracture; and moderate lumbar stenosis.[39] The ALJ found the plaintiff's obesity non-severe and found that her only medically determinable mental impairments (opioid use disorder and stimulant use disorder) are non-severe because they cause no more than mild limitation in each of the four broad functional areas. For those ratings, the ALJ cited the plaintiff's daily activities (preparing simple meals, driving, making change, shopping, laundry), her ability to provide information to examiners and providers, her cooperative and pleasant presentations, treatment notes often describing her attention as alert, and a September 2023 trip to Tijuana.[40] The ALJ stated that the RFC assessment "reflects the degree of limitation" found in the paragraph B analysis.[41]

At step three, the ALJ considered listings 1.15, 1.16, and 1.18, found the required medical criteria absent, and addressed the cane testimony against the assistive-device criteria.[42] The ALJ then assessed an RFC for a reduced range of light work: no sitting limitation; standing and walking six hours; lifting twenty pounds occasionally and ten frequently; never climbing ladders

[37] AR 85–86, 90.

[38] AR 16.

[39] AR 12.

[40] AR 13–14.

[41] AR 14.

[42] AR 14–15.

or balancing; frequently performing other postural activities; and no work around heights or heavy machinery.[43] The ALJ found the plaintiff's symptom statements "not entirely consistent" with the record.[44] She found Dr. Tang's opinion persuasive overall as supported by his examination and consistent with the record; she acknowledged his statement that the plaintiff "should alternate sitting, standing, and walking" but found, "based on the record as a whole," that the plaintiff can vary positions during regular breaks and needs no sit-stand-walk option beyond them.[45] She found Dr. Borden's opinion persuasive as supported by her full-record review and reasonable explanation and as consistent with mental-status examinations that have largely been normal.[46]

The ALJ found Dr. Gallo's opinion unpersuasive. On supportability, she reasoned that the moderate and marked limitations are "not fully supported by the evaluation findings": although the plaintiff "had low memory scores on testing," her recent and remote memory "seemed to be intact"; her full-scale IQ of 86 is low-average; she reported an "ok" mood with a full, congruent affect; and her thought process was intact, linear, and logical.[47] On consistency, the ALJ reasoned (adopting Dr. Borden's explanation) that the treatment records "do not support consistent findings" of problems with cognition, intelligence, memory, or attention: mental-status examinations have been "notable at times" for depressed mood, constricted affect, poor eye contact, and sleepy or drowsy attention, but have largely shown the plaintiff alert and oriented, with normal mood, unremarkable thought, alert attention, a cooperative demeanor, and fair insight.[48] At step four, the ALJ found no past relevant work. At step five (relying on VE testimony in response to a hypothetical that was more restrictive than the RFC because it included mental limitations (a footnote explains that the ALJ ultimately concluded that the record does not support a severe mental impairment)), the ALJ found that the plaintiff can perform the occupations of

---

[43] AR 15.

[44] AR 16.

[45] AR 19–20.

[46] AR 20.

[47] AR 21 (citing Ex. 17F/3, 4, 6).

[48] *Id.*

United States District Court
Northern District of California

marker (136,780 jobs), routine clerk (117,920 jobs), and office helper (6,960 jobs), and thus is not disabled.[49]

**LEGAL STANDARDS**

**1. Standard of Review**

Under 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), the court may set aside the Commissioner's denial of benefits only if the ALJ's findings are not supported by substantial evidence or rest on legal error.[50] Substantial evidence is "more than a mere scintilla" and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[51] The court reviews the record as a whole, weighing the evidence that supports and the evidence that detracts from the ALJ's conclusion.[52] Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's; but the court reviews only the reasons the ALJ gave and may not affirm on a ground on which the ALJ did not rely.[53] An error is harmless if it is inconsequential to the ultimate nondisability determination.[54]

**2. The Five-Step Evaluation**

The ALJ followed the five-step sequential evaluation: (1) substantial gainful activity; (2) a severe medically determinable impairment; (3) whether an impairment meets or equals a listing; (4) the RFC and past relevant work; and (5) other work in the national economy. The claimant bears the burden at steps one through four; the Commissioner bears a limited burden at step five.[55]

[49] AR 21–23, 22 n.1. Per the Commissioner, the VE also testified that adding limitations to following simple instructions and to tasks without a production-rate pace would not change the available occupations or job numbers. AR 121–22; Comm'r's Br. – ECF No. 15 at 23.

[50] 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

[51] *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up).

[52] *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

[53] *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[54] *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008), *superseded by statute on other grounds*.

[55] 20 C.F.R. § 416.920(a)(4); AR 11–12.

United States District Court
Northern District of California

For SSI, benefits are not payable before the month after the application month, so the relevant period runs from the February 28, 2022 application date.[56]

## ANALYSIS

### 1. The ALJ's Evaluation of Dr. Gallo's Opinion

For applications filed after March 27, 2017, the ALJ does not defer or give specific evidentiary weight to any medical opinion; she evaluates each opinion's persuasiveness, and must articulate her findings on the two most important factors, supportability and consistency.[57] Supportability looks to the objective medical evidence and explanations the source presents; consistency looks to the other medical and nonmedical evidence.[58] The ALJ's persuasiveness findings must themselves be supported by substantial evidence.[59] The ALJ's evaluation of Dr. Gallo's opinion does not meet that standard.

#### 1.1 Supportability

The ALJ gave four intra-report reasons: the notation that recent and remote memory seemed intact, the low-average full-scale IQ, the unremarkable mood and affect, and the intact thought process. Those reasons do not add up to substantial evidence because they leave the core of the report unaddressed. Dr. Gallo administered standardized instruments and tied her functional assessment to the results: processing speed at the second percentile, memory indices between the 0.2 and second percentiles, and Trail Making times roughly double to quadruple the thresholds she identified as flagging deficient performance.[60] The decision engages none of this. It acknowledges "low memory scores" only to set them against a single clinical notation, and it invokes the full-scale IQ of 86, a composite at the eighteenth percentile that Dr. Gallo herself cited as the basis for a moderate, not marked, limitation on complex tasks (without explaining how a low-average

[56] 20 C.F.R. § 416.335; AR 11.

[57] 20 C.F.R. § 416.920c(a), (b)(2), (c)(1)–(2); *Woods*, 32 F.4th at 791–92.

[58] 20 C.F.R. § 416.920c(c)(1)–(2).

[59] *Woods*, 32 F.4th at 787, 792; *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

[60] AR 1211–12, 1214.

United States District Court
Northern District of California

composite contradicts second-percentile processing speed or 0.2-percentile delayed memory, domains the composite does not isolate).[61] The mood, affect, and thought-process findings likewise describe different functions; they say nothing about processing speed, sustained pace, or stress tolerance, which are the functions underlying the pace and adaptation limitations the ALJ rejected.

The ALJ was entitled to weigh the report's internal tension about memory (the parties quote the same page of the report for opposite propositions) and she need not adopt an examining source's conclusions.[62] But she resolved that tension in a single sentence while bypassing the objective results altogether, and she did not acknowledge (much less discuss) the report's explanation that the memory impairment reflected an inability to remain focused. The rational-interpretation rule presupposes that the ALJ actually confronted the conflicting evidence; a court cannot affirm by isolating a specific quantum of supporting evidence while the significant probative evidence goes unexamined.[63] As for the social limitations, the ALJ adopted Dr. Borden's view that the marked ratings were inconsistent with the narrative's description of a pleasant, cooperative claimant who was quick to establish rapport. A cooperative hour in a structured, one-on-one evaluation is some evidence of social functioning, but the decision does not explain how it addresses sustained interaction with supervisors, co-workers, and the public under ordinary work pressures (the function Dr. Gallo rated) particularly when the longitudinal notes also record a guarded demeanor and reported social isolation.[64]

**1.2 Consistency**

The consistency finding fares somewhat better because the ALJ acknowledged the abnormal mental-status findings and weighed them against the normal ones. That is ordinarily the kind of conflict resolution committed to the ALJ. Two problems remain. First, the treatment records were

---

[61] AR 21, 1212, 1214.

[62] *Compare* Pl.'s Br. – ECF No. 11 at 9–10, *with* Comm'r's Br. – ECF No. 15 at 10 (both citing AR 1210).

[63] *Reddick*, 157 F.3d at 720, 722–23; *cf. Smartt v. Kijakazi*, 53 F.4th 489, 496 (9th Cir. 2022) (the ALJ resolves ambiguities in the medical evidence).

[64] AR 20–21, 973, 979, 1042, 1082; *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) (a claimant need not be utterly incapacitated).

not silent on the functions Dr. Gallo tested. Across September 2023 to March 2024, the therapy notes repeatedly recorded drowsy or distracted attention, a distractible thought process, slowed or mumbled speech, and limited insight (including at discharge after a ninety-day structured stay) alongside recurrent diagnoses of moderate recurrent major depressive disorder; a January 2024 note recorded that the plaintiff struggled to remember and organize her appointments despite medication compliance; and she opened a January 2024 orthopedic visit unable to say what month it was.[65] The decision discounted those findings by relative frequency (attention was "often" alert though sleepy or distracted "at times") without explaining why routine notations of alertness at some visits answer the specific deficits (processing speed, delayed recall, sustained attention) that the testing measured and the abnormal notes corroborate.[66] Second, the rationale rests in part on the premise that ordinary treatment notes would document psychometric deficits if they existed. As the plaintiff argues, brief visit notes recording alertness and orientation are not designed to measure processing speed or delayed memory, so their silence is weak evidence that the deficits are absent, a point with particular force at step two's de minimis screen.[67] The Commissioner is right that Ms. Jennings-Parriott's notes are not "medical opinions" requiring their own persuasiveness articulation; they matter here as the evidence against which the ALJ measured Dr. Gallo's consistency.[68]

**1.3 Dr. Borden's Testimony**

The ALJ's reliance on Dr. Borden does not fill the gap. An ALJ may credit a reviewing expert over an examining source, but the choice must rest on reasons supported by substantial evidence, and Dr. Borden's stated reasons largely restate the two rationales above: the pleasant presentation and the absence of consistent corroboration in the treatment notes.[69] Her one distinct point is fair

---

[65] AR 905, 966, 973, 979, 999–1000, 1030, 1042–43, 1048.

[66] AR 14, 21.

[67] Reply – ECF No. 19 at 4; *Smolen*, 80 F.3d at 1290; *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005).

[68] 20 C.F.R. § 416.913(a)(2); Comm'r's Br. – ECF No. 15 at 12.

[69] AR 20–21, 108–18.

(the reported psychiatric hospitalizations are not documented in the file), but it goes to a single historical datum in the clinical interview, not to the standardized testing, which Dr. Borden did not contend was invalid or the product of poor effort. Indeed, she acknowledged that the processing-speed and memory scores could reflect severe limitations and discounted them only because she saw no cognitive diagnosis or corroboration in routine treatment records.[70] Requiring longitudinal corroboration in routine notes as a precondition to crediting objective test results inverts, at least at step two, the de minimis severity standard. Because the credited testimony shares the defects of the ALJ's own analysis, it cannot supply the missing substantial evidence.[71]

### 1.4 Harmless Error

The error is not harmless. The Commissioner contends that any error is inconsequential because the VE testified that adding limitations to following simple instructions and to tasks without a production-rate pace would leave the same three occupations available.[72] But that hypothetical does not capture the limitations at issue. Dr. Gallo's mild rating for simple instructions is consistent with simple work, and the production-pace restriction arguably addresses part of the pace limitation. Nothing in the hypothetical, however, accounts for a marked limitation in adapting to ordinary work stresses and changes (including completing a normal workday and workweek) or for the moderate (on the check-box form, marked) limitations in workplace interaction, and the VE was not asked about off-task time, absenteeism, or social restrictions.[73] The ability, on a sustained basis, to respond appropriately to supervision, co-workers, and usual work situations and to deal with changes in a routine work setting is a basic mental demand of unskilled work, and a substantial loss of that ability justifies a finding of disability.[74] Because the court cannot say that the step-five finding would stand if the rejected limitations were credited in whole or in part, remand is required.

---

[70] AR 107–09, 114–15; Pl.'s Br. – ECF No. 11 at 27.

[71] *Smolen*, 80 F.3d at 1290; *Webb*, 433 F.3d at 687.

[72] Comm'r's Br. – ECF No. 15 at 23 (citing AR 121–22); *Tommasetti*, 533 F.3d at 1038.

[73] AR 121–22, 1214, 1217; Reply – ECF No. 19 at 7–8.

[74] SSR 85-15, 1985 WL 56857, at *4.

United States District Court
Northern District of California

**2. Step Two and the Residual Functional Capacity**

Step two is a de minimis screening device: an impairment is non-severe only if the evidence establishes a slight abnormality with no more than a minimal effect on the ability to work.[75] For mental impairments, the ALJ rates the four broad functional areas; ratings of none or mild generally yield a non-severity finding.[76] Whatever the step-two outcome, the RFC must account for all medically determinable impairments, severe or not, and a step-two error is harmless where the ALJ properly considers the impairments at the RFC stage anyway.[77]

The step-two determination here rests on the same evidentiary rulings just discussed. The ALJ limited the medically determinable mental impairments to the substance-use disorders by adopting Dr. Borden's view that the depression and PTSD references do not meet the criteria of either impairment — without reconciling the diagnosis of unspecified depressive disorder by Dr. Gallo, an acceptable medical source, or the treating clinicians' recurrent diagnoses of moderate recurrent major depressive disorder.[78] And the mild ratings rest on daily activities (laundry, microwave meals, a single trip to Tijuana) and cooperative presentations, while the decision addressed only a slice of the contrary evidence: it cited the laundry-detergent testimony, for example, but not the testimony about forgetting appointments and losing her train of thought mid-conversation, and it did not engage the testing at all.[79] The court does not hold that the evidence compels a severity finding; that is for the ALJ on a proper evaluation. But because the medically-determinable-impairment finding and the severity ratings depend on the flawed opinion evaluation, they must be revisited.

---

[75] *Smolen*, 80 F.3d at 1290; *Webb*, 433 F.3d at 686.

[76] 20 C.F.R. § 416.920a(b)–(d).

[77] 20 C.F.R. § 416.945(a)(2); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[78] AR 13, 20, 966, 973, 979, 1213; 20 C.F.R. § 416.902(a) (acceptable medical sources include licensed psychologists).

[79] AR 13–14, 85–86, 90; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Reddick*, 157 F.3d at 722 (claimants should not be penalized for attempting to lead normal lives).

The RFC falls with them, on a narrower ground than the plaintiff urges. The plaintiff argues (citing *Hutton* and this court's pre-*Woods* decision in *Carlson*) that the ALJ's own mild paragraph B ratings required corresponding RFC restrictions or an explanation for their absence; the Commissioner responds (citing *Woods* and *Alexander*) that the ALJ's statement that the RFC reflects the paragraph B findings, together with her discussion of the mental-health evidence in the RFC section, is procedurally sufficient.[80] The court need not resolve that dispute. The defect here is not one of articulation: the RFC excluded mental limitations because the ALJ found Dr. Gallo unpersuasive and the mental impairments non-severe, and those findings are unsupported for the reasons above. *Buck*'s harmless-error rule does not save the decision, because the RFC analysis did not properly consider limitations the ALJ had erroneously rejected. On remand, the ALJ must reassess the medically determinable mental impairments, their severity, and the RFC.[81]

**3. Dr. Tang's Opinion and the Alternating-Positions Limitation**

If the RFC conflicts with a medical-source opinion, the ALJ must explain why she did not adopt the opinion.[82] The ALJ found Dr. Tang persuasive, acknowledged his statement that the plaintiff should alternate sitting, standing, and walking, and then found (based on the record as a whole) that regular breaks suffice.[83] That explanation does not engage the opinion's specifics. According to the reply, Dr. Tang's medical source statement limits sitting to two hours at a time and standing and walking to one hour each at a time; the decision does not mention those durational findings, and the record evidence the ALJ cited (a normal gait, improvement with Mobic, intermittent swelling) speaks to ambulation and pain control, not to positional tolerance

---

[80] Pl.'s Br. – ECF No. 11 at 30–31 (citing *Hutton v. Astrue*, 491 F. App'x 850, 850–51 (9th Cir. 2012); *Carlson v. Berryhill*, No. 18-cv-03107-LB, 2019 WL 1116241, at *17 (N.D. Cal. Mar. 10, 2019)); Comm'r's Br. – ECF No. 15 at 19–22 (citing *Woods*, 32 F.4th at 794; *Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877, at *1 (9th Cir. Feb. 14, 2024) (unpublished)).

[81] *Buck*, 869 F.3d at 1048–49; 20 C.F.R. § 416.945(a)(2); SSR 96-8p, 1996 WL 374184, at *5, *7.

[82] SSR 96-8p, 1996 WL 374184, at *7; 20 C.F.R. § 416.920c.

[83] AR 19–20.

over an eight-hour day.[84] The Commissioner defends the omission on the ground that Dr. Tang did not articulate any specific alternating-positions limitation, but that is not a reason the ALJ gave, and, if AR 1192 reads as the plaintiff represents, it is not accurate either.[85] The plaintiff cited AR 1192 for the first time in reply, but she challenged the ALJ's treatment of the alternating-positions statement in her opening brief, and the citation is fair rebuttal to the Commissioner's no-specifics argument, so the court considers it. Because the court remands on the grounds above, it does not decide whether this issue alone would require remand. On remand, the ALJ must address the alternation and durational components of Dr. Tang's statement (incorporating them into the RFC or explaining, with record support, why not) and must obtain vocational testimony about any positional limitation included. Dr. Tang's "pending mental health evaluation" qualifiers require no separate ruling: the Commissioner is right that they are not opined limitations, but they underscore that Dr. Tang treated the plaintiff's mental functioning as an open question bearing on her work capacity, a question the remand addresses.[86]

### 4. Remedy

The plaintiff asks the court to credit the rejected evidence as true and remand for an award of benefits. That extraordinary remedy requires that (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, (2) the record is fully developed and further proceedings would serve no useful purpose, and (3) if the rejected evidence were credited as true, the ALJ would be required to find the claimant disabled; even then, the court retains discretion to remand for further proceedings where the record as a whole creates serious doubt about disability.[87] The first condition is met, but not the second or third. The record is not free of conflicts, ambiguities, or gaps: Dr. Borden's testimony conflicts with Dr. Gallo's opinion; the reported psychiatric hospitalizations are

---

[84] AR 1192 (per Reply – ECF No. 19 at 6); AR 20.

[85] Comm'r's Br. – ECF No. 15 at 13–14; *Garrison*, 759 F.3d at 1010; Reply – ECF No. 19 at 5–6 (citing *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

[86] AR 1195, 1197, 1200–01; Comm'r's Br. – ECF No. 15 at 14.

[87] *Garrison*, 759 F.3d at 1020–21; *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100–02 (9th Cir. 2014).

United States District Court
Northern District of California

uncorroborated; the extent of any mental limitations (and of any positional limitation under Dr. Tang's opinion) is unresolved; and the VE's testimony on the augmented hypothetical shows that a supported non-disability finding remains possible depending on the limitations found. Enhancement of the record would be useful — for example, obtaining the hospitalization records or further expert input.[88] The court therefore remands for further proceedings, not benefits. On remand, the ALJ must reevaluate Dr. Gallo's opinion under 20 C.F.R. § 416.920c, confronting the standardized-test results; reassess the medically determinable mental impairments (including the depressive-disorder diagnoses) and their severity at step two; reassess the RFC and, as needed, steps three through five, with vocational evidence addressing any mental or positional limitations found; address the alternation and durational components of Dr. Tang's opinion; and further develop the record as appropriate.

## CONCLUSION

The court grants the plaintiff's motion in part (denying her request for a remand for an award of benefits), denies the Commissioner's cross-motion, reverses the Commissioner's final decision, and remands the case under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this order. This resolves ECF Nos. 11 and 15.

**IT IS SO ORDERED.**

Dated: September 15, 2026

LAUREL BEELER
United States Magistrate Judge

[88] *Treichler*, 775 F.3d at 1103–04.